An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1113

Filed 5 August 2026

Currituck County, No. 24JT001026-260, 24JT001027-260

IN THE MATTER OF: H.A., E.A.

Appeal by Respondent-Mother from Orders entered 24 and 29 July 2025 by Judge Meader W. Harriss, III, in Currituck County District Court. Heard in the Court of Appeals 21 July 2026.

*Lisa Noda for Respondent-Appellant Mother.*

*Courtney S. Hull for Petitioner-Appellee Currituck County Department of Social Services.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Jackson W. Moore, Jr., for Guardian ad Litem.*

HAMPSON, Judge.

**Factual and Procedural Background**

Respondent-Mother appeals from an Order of the trial court terminating her

parental rights to her two children.[1] The Record before us tends to reflect the following:

Respondent-Mother has two children, Adelaide and Eloise,[2] both born in May 2012. On 8 and 9 May 2022, the Currituck County Department of Social Services (DSS) received CPS reports alleging improper supervision, substance abuse, and domestic violence between Respondent-Mother and her boyfriend David. During the following assessment period, Respondent-Mother did not cooperate with DSS beyond allowing the children to be interviewed at school. DSS was unable to assess the home, speak to Respondent-Mother, or complete a safety assessment.

On 25 May 2022, Respondent-Mother filed a complaint for an ex parte domestic violence protective order (DVPO) against David. However, she left the court during lunch recess, did not return, and the ex parte DVPO was dismissed.

A third report was made to DSS on 13 June 2022, alleging further domestic violence incidents and that the children reported frequent verbal and physical altercations between Respondent-Mother and David. DSS conducted a home visit. David was not present as he had left the home after a domestic violence incident. Respondent-Mother reported David had a history of breaking into the home and that the children were aware of his drug use. She agreed that she would not allow David

---

[1] Respondent-Father's parental rights were terminated in the same Order. Respondent-Father has not met the children, did not participate in reunification efforts or the case below, and reunification efforts were ceased on 16 December 2022. He is not a party to this appeal.

[2] Pseudonyms agreed upon by the parties.

into the home but was not willing to file a DVPO against him.

On 22 June 2022, during a scheduled home visit, a DSS social worker heard yelling and items being destroyed from inside Respondent-Mother's apartment. The social worker called law enforcement and, while waiting, saw Respondent-Mother walking away from the apartment building. Several minutes later, the social worker saw Adelaide and Eloise attempting to follow their mother and spoke to them. They reported David had been living in the home for two days and had gotten into an argument with Respondent-Mother. DSS created a new plan with Respondent-Mother, and she agreed to obtain a DVPO. The next day, Respondent-Mother was taken to the office of the county clerk. She took the DVPO paperwork with her but did not file the DVPO.

On 24 June 2022, DSS filed juvenile petitions alleging the children were neglected. The trial court placed them in DSS custody, and the children were placed with their maternal aunt and uncle.

On 16 September 2022, the trial court adjudicated the children as neglected. Respondent-Mother entered into a case plan and agreed to undergo mental health treatment, obtain employment, and submit to drug testing. She was ordered to avoid domestic violence disputes and be willing to commit to having no contact with David.

For the remainder of the pendency of this case, Respondent-Mother successfully avoided further domestic disputes but maintained sporadic contact with David. For example, David was stopped in September 2022 while driving Respondent-

Mother's car. Respondent-Mother admitted he was at her residence on at least one occasion, and DSS observed his vehicle at her home.

In August 2023, Respondent-Mother signed a lease to rent two bedrooms in the home of a friend. At this time, the maternal aunt and uncle with whom Adelaide and Eloise had been placed informed DSS they could no longer care for the children. The friend who owned the home agreed to have the children placed with her until Respondent-Mother moved in, and on 18 August the trial court granted a trial placement with Respondent-Mother. In October 2023, DSS was informed Respondent-Mother had removed the children from the home and taken them to stay in a hotel room reserved under David's name. The trial court terminated the trial placement.

Respondent-Mother had begun attending therapy in January 2023 and stopped attending in November 2023. Her therapist did not release her from therapy and felt she had made progress but not all goals were met. Respondent-Mother has refused to comply with drug screenings requested by DSS. She has not provided DSS or the trial court with proof of employment, income, or evidence of stable housing.

On 2 November 2024, the trial court ceased reunification efforts based on findings Respondent-Mother had been unsuccessful in working her case plan, had terminated the trial placement with the children, and had continued to maintain contact with David. Following this ruling, Respondent-Mother called the children and told them they would never see her again and that she was going to kill herself.

Respondent-Mother has not had visitation with the children since November 2023. Between that period and the trial court's termination of her parental rights she submitted numerous erratic communications to DSS, including phone calls and emails in which she threatened DSS workers and demanded they remove a woman's daughter because she saw David's vehicle at the woman's residence.

On 23 December 2024, DSS filed a petition to terminate Respondent-Mother's parental rights to both children. Following the adjudication hearing, the trial court found grounds existed to terminate her rights under N.C. Gen. Stat. §§ 7B-1111(a)(1) and 7B-1111(a)(2). The trial court concluded termination was in the best interests of the children and terminated Respondent-Mother's parental rights by Order entered 29 July 2025.

Respondent-Mother filed timely notice of appeal.

**Issue**

The sole issue on appeal is whether the trial court erred in determining statutory grounds existed to terminate Respondent-Mother's parental rights.

**Analysis**

A proceeding to terminate parental rights consists of a two-step process: an adjudicatory stage and a dispositional stage. *In re D.R.B.,* 182 N.C. App. 733, 201, 843 S.E.2d 474, 576 (2020). In the adjudicatory stage, the petitioner must show the existence of one of the grounds for termination of parental rights enumerated in N.C. Gen. Stat. § 7B-1111(a). *Id.* If at least one ground for termination is shown, the trial

court proceeds to the dispositional phase and determines whether termination of parental rights is in the best interest of the child. *Id.* Respondent-Mother challenges only the trial court's finding that grounds exist to terminate her parental rights. She does not challenge its determination that termination is in the children's best interests.

During the adjudicatory stage, the petitioner must show by clear, cogent, and convincing evidence that one or more statutory grounds for termination exist. *Id.* On appeal, we review whether the trial court's conclusion is supported by its findings of fact, and whether clear, cogent, and convincing evidence supports those findings. *Id.* The "clear, cogent, and convincing" evidentiary standard is a stricter standard of proof than a preponderance of the evidence, but less strict than proof beyond a reasonable doubt. *Id.*

The trial court found the existence of two statutory grounds for termination: neglect under N.C. Gen. Stat. § 7B-1111(a)(1) and failure to make reasonable progress under § 7B-1111(a)(2). We address the latter ground.

Section 7B-1111(a)(2) of our General Statutes provides parental rights may be terminated upon a finding that:

> The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. No parental rights, however, shall be terminated for the sole reason that the parents are

unable to care for the juvenile on account of their poverty.

N.C. Gen. Stat. § 7B-1111(a)(2) (2025).

Respondent-Mother argues the trial court's findings regarding her progress are unsupported by clear, cogent and convincing evidence. She also argues the trial court's determination she failed to make reasonable progress is unsupported by its findings because the most important part of her case plan was to refrain from domestic violence disputes and the trial court found "there have not been any ongoing domestic disputes between [Respondent-Mother] and [David]."

Under her case plan, Respondent-Mother was ordered to participate in mental health treatment until deemed unnecessary by the provider, submit to random drug screens, including hair follicle tests, refrain from engaging in domestic disputes, be willing to engage in no contact with David, provide proof of employment and wages to DSS, and obtain and maintain a stable home environment for the children.

The trial court found Respondent-Mother had attended therapy appointments from January 2023 through November 2023 but had stopped attending before being released by her therapist, she did not comply with drug screenings requested by DSS, that Respondent-Mother had avoided domestic disputes but maintained sporadic contact with David, including staying with him and the children at a hotel, never provided proof of employment or income to DSS, and that the court was "not aware" if Respondent-Mother had secured her own housing, though she provided an address in Elizabeth City where she has been living.

Respondent-Mother does not specifically contest any of the trial court's findings regarding her case progress. Instead, because she was not cross-examined at the adjudication hearing, she argues "[a]ll findings regarding [Respondent-Mother's] compliance with her case plan or her progress correcting the conditions which lead (sic) the juveniles into care are not supported by clear, cogent, and convincing evidence because there was none regarding her compliance at the time of the hearing."

However, competent witness testimony at the adjudication hearing supports each of the relevant findings. Respondent-Mother's therapist testified her last session was in November 2023, more than a year before the termination petition was filed, that Respondent-Mother had made progress but her goals were not met, and she had not released Respondent-Mother from therapy or determined she was no longer in need of therapy. A DSS social worker testified Respondent-Mother had not complied with drug screen requests and never took a drug screen. Another testified Respondent-Mother had continued to have sporadic interactions with David, including during the children's trial placement with her. Testimony from multiple DSS representatives indicated Respondent-Mother had never provided proof of employment or income. Witnesses also testified to her erratic behavior when communicating with both the children and DSS.

Clear, cogent, and convincing evidence supports the trial court's findings that Respondent-Mother failed to comply with her case plan by failing to receive mental

health treatment as directed, refusing drug screens, maintaining contact with David, and failing to provide proof of income. Although she avoided domestic disputes and made some amount of progress in other areas such as mental health treatment, trial courts have "ample authority to determine that a parent's extremely limited progress in correcting the conditions leading to removal adequately supports a determination that a parent's rights . . . are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2)." *In re B.O.A.,* 372 N.C. 372, 386, 831 S.E.2d 305, 314 (2019). The trial court's findings support its conclusion this ground for termination exists.

Because a single ground for termination is sufficient, we do not address the other ground adjudicated by the trial court. *In re B.R.L.,* 381 N.C. 56, 59, 871 S.E.2d 491, 494 (2022). As Respondent-Mother does not challenge the trial court's determination that termination was in the children's best interests, the trial court did not err in terminating Respondent-Mother's parental rights.

## Conclusion

Accordingly, for the foregoing reasons, we affirm the trial court's Order terminating Respondent-Mother's parental rights.

AFFIRMED.

Judges GORE and GRIFFIN concur.

Report per Rule 30(e).